Ken ROCHA and Ken Rocha Automotive, Inc., Plaintiffs,

v.

STATE OF RHODE ISLAND PUBLIC UTILITIES COMMISSION; Division of Public Utilities and Carriers; James J. Malachowksi, Individually and in his Official Capacity; William A. Maloney, Individually and in his Official Capacity; and Bruce A. Stevenson, Individually and in his Official Capacity, Defendants.

C.A. No. 94–0044.

United States District Court, D. Rhode Island.

March 23, 1998.

Kevin M. Brill, Corrente, Brill & Kusinitz, Providence, RI, for Plaintiffs.

James R. Lee, Office of the Attorney General, Appellate Div., Providence, RI, for Defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on defendants' objection to Magistrate Judge Timothy Boudewyns' Report and Recommendation suggesting that the Court deny defendants' motion for summary judgment. The underlying matter at issue is whether defendants, the Division of Public Utilities and Carriers of the Public Utilities Commission of the State of Rhode Island ("PUC"), James J. Malachowksi, the Public Utilities Administrator, ("Malachowski"), William A. Maloney, the Associate Administrator for Motor Carriers, ("Maloney"), and Bruce A. Stevenson, the Deputy Administrator, ("Stevenson"), (collectively, "defendants") violated the due process rights of plaintiffs, Ken Rocha ("Rocha") and Ken Rocha Automotive, Inc., ("KR Automotive")(collectively, "plaintiffs") in connection with disciplinary action taken against them. Defendants claim that the Magistrate Judge erred in recommending that their motion for summary judgment be denied. This Court must evaluate the Magistrate

Judge's Report and Recommendation in light of the facts and circumstances existing as of the date of the hearing on the objection. For the reasons that follow, this Court declines to adopt the Report and Recommendation and instead grants defendants' motion for summary judgment.

## I. Background

The facts of this case as stated by the Magistrate Judge are essentially undisputed:

According to the amended complaint, plaintiff Rocha is, and at all relevant times was, the President and sole shareholder of KR Automotive, a licensed towing company in the State of Rhode Island. As a licensed tower, KR Automotive was subject to regulation and disciplinary action by the PUC pursuant to R.I.G.L. 39–12–10.

In 1990, KR Automotive was the largest tower of automobiles and other vehicles in the City of Providence, towing hundreds more vehicles per year than its closest competitor. KR Automotive received business from a variety of sources, including private property owners, the Providence Police Department and the State Police.

Between 1988 and 1990, the PUC received eighteen complaints from customers regarding KR Automotive. In that period of time, KR Automotive towed approximately 5,000 cars. Beginning in 1990, the PUC, under the supervision of its Administrators, held four fitness hearings regarding plaintiffs and the complaints it had received over the two-year period. Each of the relevant PUC orders were signed and authorized by Administrators Maloney and either Stevenson or Malachowski, who were responsible for overseeing the process surrounding the fitness hearings.

Plaintiffs' first fitness hearing before the PUC in 1990 resulted from two unresolved consumer complaints and ended in an order that plaintiffs return an automobile to its owner and serve a ten day suspension, later reduced to one day. Plaintiffs' second fitness hearing involved eighteen complaints, which resulted in an additional thirty day suspension order. During plaintiffs' third fitness hearing, involving several new complaints, plaintiffs and the PUC agreed to resolve those matters and all prior rulings with a nolo plea and a stipulated suspension of seventy-five days. Plaintiffs signed the stipulation and on January 10, 1992, Deputy Administrator Stevenson and Associate Administrator Maloney executed the agreement on behalf of the PUC. In lieu of the suspension, plaintiffs could pay a $20,000 fine or donate $20,000 worth of automobiles to charity. Plaintiffs did not serve any of the suspension time, did not pay any part of the fine and did not donate a single automobile to charity.

During the course of these proceedings, it is apparent that the PUC operated in a manner that denied KR Automotive some basic procedural rights. On one occasion, it held a hearing although neither Rocha nor KR Automotive, nor counsel for them was present. As a result, plaintiffs were not permitted to cross-examine the witnesses against them. The Rhode Island Superior Court sitting in Providence County subsequently ordered the PUC to provide Rocha and KR Automotive with the opportunity to cross-examine these witnesses. On another occasion, the PUC refused to grant a continuance although Rocha suffered significant medical problems. Again, the Superior Court ordered the PUC to grant the continuance.

On November 1, 1991, Rocha was arrested by the State Police for possession of three stolen vehicles and for driving an automobile without the owner's consent. In March 1992, he was stopped by Cranston Police for speeding and driving an unregistered vehicle. The Cranston stop evolved into an arrest whereby Rocha was charged with possession of a motor vehicle without the consent of the owner. Although no consumer complaints were filed against KR Automotive between October 1991 and March 1992, the PUC scheduled a new fitness hearing to determine what action, if any, should be taken as a result of the four charges.

Rocha appeared at that hearing without counsel because he did not receive proper notice of the hearing and his attorney was engaged with another matter in Superior Court. Although Rocha informed the PUC of the problem, it refused to grant a continu-

ance of any length of time. Without any cause and contrary to the express representation of Rocha, the PUC believed that Rocha had other counsel.

Rocha refused to testify without the benefit of an attorney and left the hearing. As a result of previous proceedings involving Rocha, the PUC knew that it had to provide Rocha and KR Automotive with the opportunity to have counsel present at hearings. Nonetheless, the PUC immediately revoked the towing certificate of KR Automotive based on the pending criminal charges, although Rocha had not been convicted on any of the charges.

Plaintiffs appealed to the Superior Court. The Court remanded the matter and after a new hearing consistent with the Court's ruling, the PUC again revoked the towing license. Plaintiffs appealed. This time the Superior Court held that a complete revocation of his towing license was too harsh a penalty and instead ordered that the license be suspended through the date of its ruling, plus an additional seventy-five days. The PUC filed a Petition for Certiorari with the Rhode Island Supreme Court along with a Motion to Stay the Superior Court decision. The Supreme Court granted the stay and the matter was pending in the Supreme Court when the Magistrate Judge heard arguments on defendants' motion for summary judgment.

For two years, neither KR Automotive nor Rocha was permitted any opportunity to have a meaningful hearing on the merits of the charges. Although Rocha eventually was acquitted of all criminal charges, the PUC refused to return the towing certificate to KR Automotive. On January 10, 1994, a Rhode Island Superior Court justice ordered the PUC to hold a hearing on the merits of the underlying charges. After the hearing, the PUC still refused to reinstate the license.

In 1994, plaintiffs filed an action in this Court pursuant to 42 U.S.C. § 1983 alleging violation of their constitutionally protected procedural due process rights. The case was initially assigned to Senior Judge Raymond Pettine. While the case was pending here, in *Ken Rocha and Ken Rocha Automotive Inc., v. State of R.I. Util. Comm'n, et al.,* No.

PC94–1159, 1995 WL 941438 at *1 (R.I.Super., May 30, 1995), the Rhode Island Superior Court held that the PUC did not have sufficient evidence to justify the revocation of the towing license. Judge Pettine relied on that decision when he concluded that plaintiffs' allegations of procedural due process violations were actionable in *Rocha & Ken Rocha Automotive, Inc. v. James Malachowski, et al.,* No. 94–0044P (D.R.I. Sept 25, 1995). Defendants then filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that they were protected by qualified immunity, and could not be sued for their official actions in the revocation proceedings. Judge Pettine referred the summary judgment motion to Magistrate Judge Boudewyns for a Report and Recommendation. After hearing arguments, Magistrate Judge Boudewyns recommended the denial of the motion, stating that "because plaintiffs have stated a claim of procedural due process violation, defendants are not entitled to qualified immunity."

When Judge Pettine retired from the bench, this case was reassigned to this writer. Defendants then filed an objection to the Magistrate Judge's Report and Recommendation. Subsequent to the filing of the objection, in June of 1997, the Rhode Island Supreme Court decided *Rocha et al. v. State Public Utilities Comm'n,* 694 A.2d 722 (R.I., 1997), concluding that the Superior Court had erred when it found the PUC's revocation of KR Automotive's towing license to be unsupported by sufficient evidence and therefore quashed the judgment. *Id.* at 725. This Court then held a hearing on defendants' objection to the Magistrate Judge's Report and Recommendation and took the matter under advisement giving the parties an opportunity to file post-hearing memoranda. The case is now in order for decision.

## II. Standard of Review

In reviewing a Magistrate Judge's Report and Recommendation,

"[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence . . . ."

28 U.S.C. § 636(b). Thus, this Court can and should review the Report and Recommendation in light of the Rhode Island Supreme Court's June 1997 decision and determine whether summary judgment is appropriate due to these new developments.

Defendants' underlying motion was for summary judgment pursuant to Rule 56. By invoking Federal Rule 56, the moving party effectively declares that the evidence is insufficient to support the nonmoving party's case. *U.S. v. One Parcel of Real Property with Bldgs., Appurtenances, and Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.,* 960 F.2d 200, 204 (1st Cir.1992). The standard for ruling on summary judgment motions is as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). "Summary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

## III. Discussion

Because of the Rhode Island Supreme Court's decision in *Rocha et al. v. State Public Utilities Comm'n.,* this case becomes fairly simple, requiring little analysis. That decision, reversing the judgment of the Superior Court, establishes that the PUC's revocation of KR Automotive's license was justified both procedurally and substantively. This has considerable significance in the matter currently before this Court.

In their complaint in this case, plaintiffs allege that defendants' actions deprived them of their constitutionally protected procedural due process rights. The most basic component of procedural due process is that an individual must receive adequate notice and a "meaningful opportunity for a hearing" before a deprivation of a significant property interest can occur. *Lee v. State of Rhode Island,* 942 F.Supp. 750, 754 (D.R.I.1996)(citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). The right to appeal the deprivation preserves due process rights because it provides an adequate post deprivation remedy to rectify any harm done. *See Alton Land Trust v. Town of Alton,* 745 F.2d 730, 731 (1st Cir.1984); *Torres v. Superintendent of the Police of Puerto Rico,* 893 F.2d 404, 410 (1st Cir.1990). A lapse of time between the deprivation and a full hearing does not necessitate a finding of a procedural due process violation. As the First Circuit noted in *Alton,* where an appeal was taken from a denial of a subdivision permit:

> It is true that judicial correction took time, but the passage of time is an inevitable part of procedural due process. Expense and collateral injury may unfortunately result if one is forced to appeal in order to secure one's rights, but it is hard to see how this kind of harm can be eliminated. To permit the members of a lower tribunal . . . to be haled into court every time they are later found to have erred would create a whole new range of problems outstripping those the procedure would be intended to resolve.

745 F.2d at 731. Thus, when the right to appeal exists, so does the opportunity for a full and meaningful hearing. In appealing a decision and receiving a hearing, the earlier procedural due process violations are remedied.

■ Plaintiffs had a right to appeal to the Superior Court at all times from any action taken by the PUC. They exercised this right of appeal and were granted relief on numerous occasions for procedural violations by the PUC. After the final license revocation occurred another appeal was taken and the Superior Court reversed. The matter then proceeded to the Rhode Island Supreme Court where a complete review of the proceedings occurred. The Supreme Court quashed the judgment of the Superior Court, concluding that there was sufficient evidence upon which the PUC could base its decision to revoke the towing license. Thus, plaintiffs have no sustainable due process violation claims remaining at this time.

In light of the recent Rhode Island Supreme Court decision, there are no genuine issues of material fact left for determination in this case. It is clear that plaintiffs have been accorded all the process that was due them by the Rhode Island Court system. Thus, in view of recent events, the Magistrate Judge's Report and Recommendation cannot be adopted and it is clear that summary judgment should be granted in favor of defendants.

## IV. Conclusion

For the reasons stated above, defendants' motion for summary judgment hereby is granted. The clerk shall enter judgment for all defendants, forthwith.

It is so ordered.